**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL JORDAN and JUMP 23, INC., ) | |
| ) | |
| ) | Case No.: 10-cv-00407 |
| Plaintiffs, ) | |
| ) | Judge Milton I. Shadur |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| DOMINICK'S FINER FOODS, LLC and ) | |
| SAFEWAY INC., ) | |
| Defendants. ) | |

**PLAINTIFF MICHAEL JORDAN'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECUSAL**

A judge should recuse himself when a reasonable outside observer would question the judge's impartiality or would believe that the judge is biased. In this case, the Court has demeaned and disparaged Mr. Jordan, his claims and his counsel; attempted to intimidate Mr. Jordan into substantially reducing his claim for damages; and – most recently and perhaps most importantly – attempted to enlist Mr. Jordan's endorsement partners into coercing him to substantially reduce his claim for damages. The Court's conduct demonstrates that its impartiality may reasonably be questioned and that it is biased against Mr. Jordan. Therefore, the Court should recuse itself.

**LEGAL STANDARD**

The federal law governing recusal is set forth in 28 U.S.C. § 455. 28 U.S.C. § 455(a) provides that any "justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Recusal under Section 455(a) is required "whenever there is a reasonable basis for a finding of an appearance of partiality under the facts and circumstances of the case." *In re United States*, 572 F.3d 301, 308 (7th Cir. 2009) (holding writ of mandamus for disqualification of district judge was required);

*Shekar v. Donnelly*, No. 05-C-6812, 2006 WL 1840595, *7 (N.D. Ill. June 29, 2006) (stating that Section 455(a) "is concerned with whether there would be an appearance of impropriety if a given judge presided over a case").

Evaluation of a Section 455(a) motion involves "an objective standard that asks if a reasonable observer would perceive 'a significant risk that the judge will resolve the case on a basis other than the merits.'" *Fairley v. Andrews*, 423 F. Supp. 2d 800, 803 (N.D. Ill. 2006) (holding that "all of this Court's statements and interactions with Defendants in this case, taken together, may give pause to a non-legal observer, not versed in the ways of the courtroom and the risks of litigation" and therefore granting recusal motion); *see also In re United States*, 572 F.3d at 308 (a Section 455(a) motion requires determining "whether a reasonable, well-informed observer could question the Judge's impartiality"). "In applying this standard, the Court must bear in mind that 'outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *Fairley*, 423 F. Supp. 2d at 821. "[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Ligon v. City of New York*, 736 F.3d 118, 124 (2nd Cir. 2013) (holding recusal of district judge was required due to her inappropriate comments suggesting bias), *vacated in part on other grounds by Ligon v. City of New York*, 743 F.3d 362 (2nd Cir. 2014).

28 U.S.C § 455(b)(1) provides that a judge should disqualify himself "[w]here he has a personal bias or prejudice concerning a party." "In determining whether a judge must disqualify himself under 28 U.S.C. sec. 455(b)(1), the question is whether a reasonable person would be convinced the judge was biased." *C.A. Brokaw v. Mercer County*, 235 F.3d 1000, 1025 (7th Cir. 2000). Though bias under Section 455 ordinarily must stem from an extrajudicial source, recusal is warranted where a "judge's 'favorable or unfavorable predisposition . . . even though it springs

from facts adduced or events occurring at trial . . . is so extreme as to display the clear inability to render fair judgment." *Fairley v. Andrews*, 423 F.Supp.2d 800, 804 (N.D. Ill. 2006).

## **FACTS**

The only remaining issue in this case is the amount of damages to which Mr. Jordan is entitled due to Defendants' misappropriation of Mr. Jordan's identity. In the course of addressing Mr. Jordan's damages claim, the Court has repeatedly demonstrated that its impartiality could reasonably be questioned and that it is biased against Mr. Jordan. Recently, the Court actually attempted to enlist Mr. Jordan's endorsement partners into coercing him to substantially reduce his claim for damages.

**I.  The Court Has Demeaned And Disparaged Mr. Jordan, His Claims And His Counsel.**

The Court has repeatedly made comments that demean and disparage Mr. Jordan, his claims and his counsel. At a hearing on November 3, 2011, the Court expressed its disagreement with Mr. Jordan's damages claim by stating: "The bulls may make money and the bears may make money, *but the hogs get slaughtered*." (November 3, 2011 Hearing Transcript, Doc. 79 at 3:17-18 (emphasis added).) At a March 11, 2013 hearing on Defendants' motion to re-depose a witness, the Court again referred to Mr. Jordan as a "hog" who would "get slaughtered." (March 11, 2013 Hearing Transcript, Doc. 144 at 8:14.) The Court again repeated that "hogs get slaughtered" when commenting on Mr. Jordan's damages claims during a June 6, 2014 hearing. (June 6, 2014 Hearing Transcript, attached hereto as Exhibit A at 7:1-4.) The Court has also described Mr. Jordan as "extraordinarily grasping and greedy" and stated that Mr. Jordan's "demand was greedy." (November 3, 2011 Hearing Transcript, Doc. 79 at 4:24-25; May 22, 2013 Hearing Transcript, Doc. 167 at 5:24.)

The Court's disparaging commentary has not been limited to sharing negative opinions of the current case; the Court has also volunteered its negative views of Mr. Jordan's claims against Jewel in a separate lawsuit. (*See e.g.,* Dec. 16, 2013 Hearing Transcript, Doc. 199 at 9:12-16 (noting the Court did not see why "Jordan has seen fit to sue Jewel. Jewel – I looked at their response, and their response was something that was simply a tribute to Michael Jordan for all the things he has done"); May 22, 2013 Hearing Transcript, Doc. 167 at 10:15-19 (noting that "Jewel's page, as I remember it, although it was my good friend and colleague's, Gary Feinerman's, case, had – was nothing but a tribute to Jordan, it didn't have any commercial item in it, except to put Jewel's name before the public").) The Court's critical assessment, however, was incorrect; the Seventh Circuit reversed the district court's dismissal of Mr. Jordan's claims against Jewel and remanded for further proceedings. *See Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509, 522 (7th Cir. 2014).

## II. The Court Has Attempted To Intimidate Mr. Jordan.

The Court has also repeatedly attempted to intimidate Mr. Jordan and his counsel into lowering Mr. Jordan's damages claim. In December 2011, Defendants brought a motion claiming that Mr. Jordan had not fully answered an interrogatory and sought sanctions for that purported failure. The Court denied Defendants' claim that Mr. Jordan's interrogatory answer was incomplete, but nonetheless threatened to award sanctions against Mr. Jordan's counsel on the unrelated ground that the Court disagreed with Mr. Jordan's damages claim. (December 5, 2011 Hearing Transcript, attached hereto as Exhibit B at 3:14-22 ("That claim in a court document I will tell you I believe is perilous in terms of how it fails to live up to the obligation of objective good faith mandated by Rule 11(b).").) A week later, the Court again suggested that sanctions might be awarded if Mr. Jordan continued to claim damages in an amount the Court thought was excessive. (December 14, 2011 Hearing Transcript, Doc. 91 at 5:19-24.)

In addition, on June 12, 2013 the Court required Mr. Jordan to attend a settlement conference conducted by the Court, over Mr. Jordan's objection and contrary to his request that his business advisor and representative be allowed to appear on his behalf. (May 22, 2013 Hearing Transcript, Doc. 167 at 16-23; *see also* Declaration of Michael Jordan, attached here to as Exhibit C, ¶¶ 1- 2.) At the same time, the Court rejected Mr. Jordan's request that someone from Defendants' senior management be present if Mr. Jordan was required to be present. (May 22, 2013 Hearing Transcript, Doc. 167 at 23-24.) During the settlement conference, the Court's sole focus was on aggressively attempting to persuade Mr. Jordan to substantially reduce his claim for damages. (Jordan Declaration, Ex. C, ¶ 3.) The Court sought no concessions from Defendants. (*Id.*) The Court also acknowledged that it had no interest in actually mediating the parties dispute and that its purpose in requiring the settlement conference had been to deliver a message to Mr. Jordan about his damages claim. (*Id.*)

**III.     The Court Has Attempted To Coerce Mr. Jordan To Reduce His Damages Claim.**

Less than a week ago, the Court took the opportunity of having Mr. Jordan's endorsement partners present in court to pressure them to coerce Mr. Jordan to lower his demand or abandon his claim. On May 12, 2014, Defendants filed a motion to unseal various endorsement agreements. Upon receiving notice of the pending motion, a number of Mr. Jordan's endorsement partners filed motions to intervene in order to oppose Defendants' motion. (*See e.g.*, Doc. 233 (Motion by Nike, Inc. to intervene); Doc. 237 (Motion by HanesBrands, Inc. to intervene); and Doc. 243 (Motion by The Gatorade Company to intervene).) On June 6, 2014, the Court held a hearing on the motions to intervene.

At outset of the June 6, 2014 hearing, the Court announced that it was planning to grant Mr. Jordan's endorsement partners' motions to intervene, which was the only issue before the Court. (June 6, 2014 Hearing Transcript, Ex. A at 3:13-18.) The Court then asked the parties to

sit down and proceeded to share a litany of demeaning and disparaging comments about Mr. Jordan, including referring to Mr. Jordan and his counsel as "Drs. Frankenstein" who "created a Frankenstein monster," and again stating that "hogs get slaughtered." (*Id.* at 4:6-18; 7:1-4.) The Court also suggested that Mr. Jordan had not brought the publisher of Sports Illustrated into the case "because his nest is feathered by promoting the ongoing preservation of his persona by an important member of the sports media, but that is another issue." (*Id.* at 8:7-10.)

> The Court concluded its comments by stating:
>
> [A]t bottom it strikes me that you people with your relationships with plaintiffs here are in a far better position than I am to -- possibly to affect Jordan's conduct. My only assets in this thing, which have proved insufficient up to this point, have been logic and objectivity, and those are not very powerful weapons of persuasion when it appears that what may be driving the litigation engine are greed, that I have commented on earlier, and notions of self-importance . . . .

(*Id.* at 8:21-9:4).

## **ARGUMENT**

The Court should recuse itself from this case under 28 U.S.C. § 455 because the Court's commentary and actions demonstrate that it is biased against Mr. Jordan or at least that its impartiality may reasonably be questioned.

The Court should recuse itself under Section 455(b)(1) because a reasonable person would believe that the Court is biased. The Court has repeatedly demeaned and disparaged Mr. Jordan, referring to him as "greedy," a "hog" to be "slaughtered" and "Dr. Frankenstein."[1] Moreover, the Court's efforts to intimidate and coerce Mr. Jordan to settle or lower his damages

---

[1] The Court clearly recognizes that these remarks about Mr. Jordan are improper, as evidenced by its attempt at the May 22, 2013 hearing to explain them away by claiming that they referred not to Mr. Jordan, but merely to his damages demand. (May 22, 2013 Hearing Transcript, Doc. 167 at 5:20-6:11.) The statements themselves belie that claim. A demand cannot be either "greedy" or a "hog"; the Court's repeated use of those terms only makes sense as a reference to the individual who is making the demand – Mr. Jordan.

claim by threatening to impose sanctions, forcing him to attend a settlement conference with the Court over his objection in order to "deliver a message" (rather than to try to mediate the dispute), and soliciting his license partners to pressure him are further evidence of the Court's bias.[2]  *See e.g., Nicodemus v. Chrysler Corp.*, 596 F.2d 152, 155-57 (6th Cir. 1979) (holding, based on the district court's remarks that the defendants "were a bunch of villains and they are interested only in feathering their own nests at the expense of everybody they can," that defendants had not received a fair preliminary injunction hearing, overturning the preliminary injunction the trial court had entered and remanding the case for a new preliminary injunction hearing in front of a different judge).

Even if the Court does not find actual bias under 455(b)(1), recusal under 455(a) is necessary because the Court's impartiality may reasonably be questioned under the facts and circumstances of the case.  Judge Castillo's opinion in *Fairley v. Andrews* is on point.  423 F. Supp. 2d 800.  In *Fairley*, Defendants moved to recuse Judge Castillo in light of comments he had made regarding defendants and certain rulings he had made against defendants.  *Id*.  In his opinion granting defendants' recusal motion, Judge Castillo explained in detail how all of his prior rulings had been supported by the law, but nonetheless found, in light of the history of parties before the court and his harsh commentary at a recent hearing, that recusal was warranted.  423 F. Supp. 2d at 820-21.  Judge Castillo explained:

> This Court admits in retrospect that it may have pushed too hard to
> reach a compromise settlement in this lawsuit.  The Court did not
> intend to have its colorful statements coerce a settlement between

---

[2] The Court further demonstrated its bias by striking Mr. Jordan's punitive damages claim by making the factual finding that Defendants acted in good faith despite the unrebutted evidence that Defendants consciously disregarded two of Defendants' intellectual property policies that required obtaining permission from Mr. Jordan for the use of his identity.  (*See* December 16, 2013 Hearing Transcript, Doc. 199 at 7:17-8:7; Plaintiff Michael Jordan's Response To Defendants' Motion Concerning Punitive Damages, Doc. 195 at 3.)

> the parties. The Court will avoid these types of statements in the future.
>
> After careful consideration of this Court's unfortunate public corruption statements - especially in the wider context of the Court's negative interactions with Defendants' counsel during the contested and extended pretrial proceedings - this Court ultimately concludes the reasonable person standard under section 455(a) has been satisfied and that this Court's recusal is required.

*Id*. at 821 (also noting that "if a judge proceeds in a case where there is (only) an appearance of impropriety in his doing so, the injury is to the judicial system as a whole and not to the substantial rights of the parties").

Like Judge Castillo in *Fairley*, the Court has pushed too hard in this case to influence Mr. Jordan to lower his damages claims and coerce a settlement with a lower recovery by Mr. Jordan. On its own, the Court's June 6 attempt to pressure Mr. Jordan's endorsement partners to convince him to lower his damages demand would cause a reasonable observer to perceive a significant risk that the Court will resolve the case on a basis other than the merits. As in *In re United States*, "[a] reasonable well-informed observer well may have concluded that the Judge was no longer acting as a neutral arbiter, but was advocating for his desired result." 572 F.3d at 311 (holding writ of mandamus was warranted because trial judge exceeded his authority in questioning the government's decision to prosecute the case and suggesting the parties should enter into a plea agreement). Accordingly, recusal under Section 455(a) is warranted in this case.

## **CONCLUSION**

As Mr. Jordan stated in his complaint: "The majority of Jordan's income, and his income potential, is now derived from his ability to license his name and persona to commercial sponsors who wish to capitalize on his fame. As a business, the licensing of Jordan's identity is just as important to him now as his professional playing career once was." (Amended Complaint, Doc. 34, ¶ 9.)

The parties agree that Mr. Jordan's damages are measured by the fair market value of Defendants' use of his identity. (*See, e.g.*, Plfs. Doc. 163 at 1-2; Defs. Doc. 69 at 8.) The parties also agree that fair market value is "[a]n objective, non-speculative license price [established] through objective evidence of benchmark transactions, such as licenses previously negotiated for comparable use" of the infringed right. *Oracle USA, Inc. v. SAP AG*, No. C 07-1658 PJH, 2011 WL 3862074, at *7 (N.D. Cal. Sept. 1, 2011) (quoted in Defs. Doc. 74 at 6).

Mr. Jordan's claim for damages is amply supported by the law and by the testimony of Mr. Jordan's fact and opinion witnesses. Nonetheless, the Court has repeatedly demeaned, disparaged and attempted to intimidate and coerce Mr. Jordan and his counsel for attempting to protect the value of the use of Mr. Jordan's identity. The Court knows that its comments about Mr. Jordan being greedy are unfounded as he has advised the Court that he intends to donate any recovery in excess of his costs to charity.

The totality of the Court's conduct demonstrates that it is biased against Mr. Jordan or at least that its impartiality may reasonably be questioned. Accordingly, Mr. Jordan's motion for recusal should be granted.

Dated: June 11, 2014

/s/ Frederick J. Sperling
Frederick J. Sperling
Sondra A. Hemeryck
Clay A. Tillack

SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500

Attorneys for Plaintiff Michael Jordan

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2014, I caused to be electronically filed the foregoing Plaintiff Michael Jordan's Memorandum In Support of Motion For Recusal using the CM/ECF system, which will cause an electronic copy to be served on counsel of record.

/s/ Clay A. Tillack