**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL JORDAN** and **JUMP 23, INC.**, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 10 C 407 |
| ) | |
| **DOMINICK'S FINER FOODS, LLC** and ) | |
| **SAFEWAY, INC.**, ) | |
| ) | |
| Defendants. ) | |

# **MEMORANDUM OPINION AND ORDER**[1]

It is an understatement to label the most recent development in this case, in which plaintiff's counsel has shifted from a posture of mere combativeness (normally encountered in varying degrees in consequence of the adversarial process) to one of launching a groundless and unwarranted personal attack on this Court's integrity, as appalling from this Court's point of view. Two interrelated factors are at work in that respect:

1. When a lawyer who may be short on scruples chooses to distort the truth to his or her own ends in a court filing, the judge whom he or she has chosen to attack is essentially without an adequate remedy -- judges are

---

[1] At the June 13 presentment date of the motion dealt with in this opinion (a copy of that motion not having been delivered to this Court until June 12), the discussion concluded with this Court's direction that counsel for defendants submit a written response by the middle of this week, to be followed by what this Court anticipated would be an oral ruling next Monday, June 23. But the press coverage over the past weekend, which understandably presented only the misleading story promulgated by plaintiff's counsel (understandably so because until now that has been the only version publicly available in written form), has triggered the earlier generation of this opinion, both (1) to set the record straight through an objective presentation rather than from a one-sided advocate's perspective and (2) to reflect the ruling called for by that objective analysis.

>    pretty much defenseless in such situations, both because of the usual tradition of nonresponse and because court filings are considered privileged.
>
> 2.  This is all of a piece with the widely understood phenomenon in the related field of libel that when a false statement is made, the truth can rarely (if ever) catch up to it, at least fully. Explanations always require far more detail and studied thought than simply leveling an accusation -- and that is the reason that flat-out lies are so difficult to deal with without expending large blocks of time and effort in the process.

And one particularly unfortunate consequence of those factors is that they often necessitate an in-kind response to counsel's attack.

    Here the counsel for plaintiff Michael Jordan has presented a meretricious motion for this Court to recuse itself -- a motion based on counsel's misleading warping of the criticism that this Court has had occasion to voice on purely legal grounds as to the extraordinarily excessive damages claim prescribed by Jordan's proposed opinion witness, in which Jordan's multimillion dollar long-term contracts with various companies to which he had hired out his name are somehow thought to be parallel to the one-time one-page participation by defendant Dominick's Finer Foods, LLC ("Dominick's") in an issue of <u>Sports Illustrated</u> that was published as a tribute to Jordan's great basketball career.[2] Interestingly, that participation was invited by <u>Sports Illustrated</u> itself because of Jordan's close affiliation with the Chicago community and because

---

[2] This should not of course be misunderstood as having sanctioned the manner in which Dominick's implemented its participation, including its insertion of a $2 discount coupon in the page that its people designed. To the contrary, this Court (as stated later) has expressly found that Dominick's violated Jordan's rights so as to establish its liability to him.

the two food chains to each of which <u>Sports</u> <u>Illustrated</u> offered a free one-page participation in its issue, both Dominick's and Jewel Foods, shared that Chicago connection.[3]

In thus leveling a charge of the appearance of bias and impropriety on the part of this Court because of its focus on the excessiveness of a $10 million price tag as a measure of Jordan's purported damages from the invasion of his persona by Dominick's without his permission, his counsel has conveniently glossed over (if not ignored entirely) for purposes of his current motion the fact that this Court has early on ruled in Jordan's <u>favor</u> as to liability, leaving the litigation a damages-only dispute. And in the latter respect, once again this Court's acknowledged criticism has focused on what level of damages can reasonably be ascribed to Dominick's conduct.

This Court's view was and is that Jordan's counsel has not articulated any reasonable predicate for advancing the $10 million damages figure[4] arrived at by Jordan's opinion witness based on Jordan's long-term multimillion dollar contracts with Nike, Hanes, Gatorade and others. That out-of-bounds claim is what has occasioned this Court's characterization of the demand in terms of greed, a characterization that is not altered by the response that billionaire Jordan plans to turn over any recovery to his not-for-profit foundation (obtaining, of course, a tax deduction)

---

[3] It is worth noting that Jordan and his counsel have not chosen to sue <u>Sports</u> <u>Illustrated</u> (or its owner Time, Incorporated) for its role in extending the invitation to participate in the tribute to Jordan.

[4] That is the number arrived at by Jordan's proposed opinion witness. At an earlier status hearing in this case, after this Court had questioned Jordan's counsel as to the basis for attaching that boxcar figure to the situation here, counsel consulted with his client before the next status hearing and then announced -- without any further explanation -- that the claimed damages number was "only" $5 million.

rather than pocketing the proceeds himself.  This Court claims no originality in having responded to that unsound analysis with a reference to George Orwell's ironic aphorism in <u>Animal</u> <u>Farm</u>:

>All animals are equal, but some animals are more equal than others.

This Court sees no virtue in, and no need for, citing chapter and verse by detailing the skewed mischaracterizations with which the motion to recuse is replete -- again to draw the parallel to libel, to refute a big lie point by point effectively involves having to repeat it (thus giving it wider circulation), then to follow it by the lengthy and detailed explanations that are necessary and require study on the part of a nonlawyer reader to provide him or her with a full understanding of the real truth.  It is just such a consideration that has led to the universal truth that our Court of Appeals has most recently reconfirmed at some length in its per curiam opinion <u>In re Sherwin-Williams,</u> 607 F.3d 474, 477 (7th Cir. 2010) (numerous citations omitted, emphasis in original):

> In evaluating whether a judge's impartiality might reasonably be questioned, our inquiry is "from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*."  That an unreasonable person, focusing on only one aspect of the story, might perceive a risk of bias is irrelevant.  Consequently, where a judge's comments, writings, or rulings are the basis for a recusal request, our analysis assumes that a reasonable person is familiar with the documents at issue, as well as the context in which they came into being.
>
> In addition to being well-informed about the surrounding facts and circumstances, for purposes of our analysis, a reasonable person is a "thoughtful observer rather than . . . a hypersensitive or unduly suspicious person."  Finally, a reasonable person is able to appreciate the significance of the facts in light of relevant legal standards and judicial practice and can discern whether any appearance of impropriety is merely an illusion.

It may however be worth referring to one pointed example that well illustrates the emptiness of counsel's claim of this Court's asserted bias or even its appearance, while at the same time exposing the improper purpose of that claim.  Jordan's counsel has conveniently

omitted from his skewed presentation the indisputable fact -- well known to him because of his direct participation -- that when the disputed issue of disclosure or nondisclosure of the details of Jordan's highly lucrative sponsorship contracts was raised during the conference held to discuss the final pretrial order in the case, it was this Court -- <u>not</u> Jordan's counsel -- who proposed that a stipulation be entered into instead that would be limited to stating the basic facts necessary to allow the litigants to make their respective arguments as to the relevance of those contracts to Jordan's damages claim, thus avoiding the disclosure of sensitive confidential information. That pro-Jordan proposal was readily welcomed by his counsel, while it was not agreed to by Dominick's counsel. But because that proposed resolution by this Court of the still-unresolved dispute between the litigants on that score[5] undercuts any notion of anti-Jordan bias or its appearance on the part of this Court, it is conspicuously absent from his counsel's own biased purported "factual" portrayal. That is not merely hypocritical -- it really puts the lie to counsel's attempted ouster of this Court, based entirely on its critiques and criticism of Jordan's over-the-top damages claim, in order to serve counsel's judge-shopping goal.

In short, the standard for evaluating the current motion for recusal cannot be grounded on the sense that might be derived by members of the general public who have perforce been subjected to drinking from the poisoned factual and legal well offered up for consumption by Jordan's counsel. This Court's application of the proper legal standard plainly calls for denial of the current motion, and this Court so orders.

---

[5] Most recently Dominick's counsel have moved to unseal those endorsement contracts (injected into the litigation not by Dominick's, but by Jordan's counsel through his reliance on his opinion witness's evaluation of Jordan's purported damages, which placed heavy emphasis on those contracts). Several of those companies have moved to intervene to oppose Dominick's motions, and this Court has granted such intervention just before Jordan's counsel fired the volley that has triggered this opinion.

That however leaves this Court with two sources of regret. One is particularly personal, the other practical.

As for the personal reason, this Court has been at the bar for just over 65 years, having spent the first three-decades-plus of that time with the same very small law firm (never in this Court's recollection having numbered more than twenty lawyers), but an objectively great firm that to this Court's knowledge has not been matched by any other firm -- small, medium, large or mega-large -- in having contributed alumni to every level of the federal judiciary (a Supreme Court justice, a Court of Appeals judge, more than one District Judge, several Magistrate Judges and a Bankruptcy Judge whose appointment this Court characterized at that time as having "filled an inside straight"). From that firm this Court moved to its present judicial post, where it has served for just two weeks short of a 34-year tenure. Throughout that period no one has impugned its integrity until now (save perhaps for a few pro se litigants of the "sovereign citizen" or similarly irresponsible ilk who have sometimes lumped this Court with others in purported widespread conspiracies to defeat justice).

Shakespeare's famous "All the world's a stage" soliloquy spoken by Jaques in <u>As You Like It</u> coined the phrase "seeking the bubble reputation," although Shakespeare ascribed it to the "soldier" rather than to the "justice," whom he listed next among his seven ages of man. It should be plain from what has been said here that this Court deeply resents counsel's unjustified effort to pierce the "bubble reputation" that this Court has earned over a longer period than counsel's total lifetime.

As for the practical consequence, it is also most regrettable that writing this opinion has had to involve such criticism of a lawyer for whom this Court had previously held some degree

of regard based on his conduct in other litigation assigned to its calendar. This most recent development in the litigation has unfortunately eroded that regard and any respect that this Court had held for Jordan's counsel to the point where this Court is concerned lest there be a danger that subliminal forces could perhaps unwittingly affect the decisional process in this case. That is a possibility that this Court has never before encountered, and it is a risk that cannot be allowed to exist even in possibility.

Accordingly this Court has elected to exercise its prerogative as a senior judge to invoke 28 U.S.C. § 294(b) and thus to withdraw from the case. It does so recognizing that the unfortunate result will be to provide Jordan's counsel with the same outcome that his forum-shopping motion for recusal had as its target. That however will have to be left for counsel's conscience and for the prospect that the assigned judge may well share this Court's view of the damages issue -- in any event, was the game worth the candle?

_____  
Milton I. Shadur  
Senior United States District Judge

Date: June 17, 2014